# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                          No. CR 06-2561  JB

JIMMY CHATTO,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Objections to Pre-Sentence Report, filed January 30, 2008 (Doc. 46).  The Court held a sentencing hearing on March 27, 2008. The primary issues are: (i) whether the Court should grant Defendant Jimmy Chatto an evidentiary hearing regarding the allegedly unsupported allegations which raise his offense level by 5 levels pursuant to U.S.S.G. § 4B1.5(b)(1); and (ii) whether the United States has proven, by a preponderance of the evidence, that  Chatto engaged in a pattern of prohibited sexual activity and thus a 5-level increase in his offense level is warranted.  Because the United States does not agree that the enhancement is appropriate, and has put forth no evidence to establish the enhancement, the Court will grant Chatto an evidentiary hearing and sustain his objections to the Presentence Investigative Report ("PSR") .

## FACTUAL BACKGROUND

The Indictment identifies two occasions when Chatto engaged in prohibited sexual conduct with a child under the age of 12 years old.  See Indictment at 1, filed December 15, 2006 (Doc. 16)("Indictment"). The United States Probation Office ("USPO") represents in its PSR and

Addendum thereto, that Chatto reported to the agents that twice -- once early in the evening and later at 2:00 a.m. in the morning -- he fondled the victim outside of and beneath her clothing.  See PSR ¶ 23, at 7 (disclosed August 23, 2007); PSR, Addendum at 1, disclosed February 5, 2008 ("Addendum").  The USPO also represents that the victim reported that such conduct occurred twice.  See Addendum at 1.

Chatto's specific statements to the agents included his recollection that one specific night, in the fall of 2005, the victim and her family were sleeping at his house.  See Addendum at 2. Chatto remembered that he was laying on the living-room floor between his daughter and the victim. See id.  Chatto recalled that, after he patted his daughter to sleep, something came over him, and that he tapped his hand on the victim's butt and touched her vagina on the outside of her pants.  See id. Chatto remembered that he kept his hand on her vagina for about fifteen to thirty seconds, but stopped, got up, and went to the bathroom, thinking to himself: "[W]hat's wrong with me?"  Id. Chatto remembered that he then returned to the living room and laid down again.  See id.

Chatto stated that, after the first incident, about 2:00 a.m. in the morning, he felt a tightness around his wrist.  See id.  Chatto reportedly realized his hand was under the victim's pants and underwear, with his finger in her vagina. See id.  Chatto stated that, after he realized what he was doing was wrong, he quickly pulled his hand out of the victim's pants. See id.  Chatto admitted to digitally penetrating the victim's vagina with his finger inserted past the nail portion of one of his digits.  See id.

## PROCEDURAL BACKGROUND

In both Counts of the Indictment, the elements of each offense were alleged.  See Indictment at 1-2.  In Count 1, the grand jury charged that Chatto

did knowingly cause and attempt to cause Jane Doe, a child who had not attained the

> age of 12 years, to engage in a sexual act, and the sexual act consisted of the penetration, however slight, of the genital opening of Jane Doe, by the finger of the defendant, with an intent to abuse, humiliate, and degrade Jane Doe.  In violation of 18 U.S.C. §§ 1153, 2241(c) and 2246(2)(c).

Indictment at 1-2.  In Count 2, the grand jury charged that Chatto

> did knowingly engage in and cause sexual contact with Jane Doe, a child who had not attained the age of 12 years, and the sexual contact consisted of the intentional touching, directly and through the clothing, of the genitalia of Jane Doe, with an intent to abuse, humiliate, harass, and degrade the victim and arouse and gratify the sexual desire of the defendant.  In violation of 18 U.S.C. §§ 1153, 2244(c) and 2246(3).

Indictment at 2.

On June 4, 2007, the parties entered into a non-binding, written plea agreement, that contained a number of stipulations.  See Plea Agreement, filed June 4, 2007 (Doc. 36)("Plea Agreement").  The plea agreement contained a number of stipulations, stating that certain enhancements applied and some did not.  See id. at 4-5.  Pursuant to the plea agreement's terms, the parties agreed to a base offense level of 30, with a 4-level adjustment pursuant to 2A3.1(b)(2), because the victim was under the age of twelve at the time of the incident.  See Plea Agreement at 4.  With a 3-level reduction for acceptance of responsibility, Chatto's resulting offense level would be 31, resulting in a Guideline imprisonment range of 108 to 135 months.  There is also a stipulation to the low end of that range.  See Plea Agreement at 5.  The Plea Agreement does not, however, mention the 5-level enhancement in U.S.S.G. § 4B1.5(b)(1).  Additionally, in one of the stipulations, the United States states that it will move, at the time of sentencing, to dismiss Count 2 of the Indictment.  See Plea Agreement at 6.

On June 4, 2007, Chatto entered a guilty plea to Count 1, Aggravated Sexual Abuse of a Child in violation of 18 U.S.C. § 2241(a) and 18 U.S.C. 2246(C).  See Plea Agreement at 2, 6.  While the Court originally set the sentencing  hearing for August 31, 2007, the PSR had not been

prepared by August 13, 2007, and Chatto filed an unopposed motion to continue the sentencing until the PSR was prepared, and until he had time to prepare possible objections to the PSR and a sentencing memorandum. See Unopposed Motion to Continue August 31, 2007 Sentencing, filed August 13, 2007 (Doc. 40)("Motion to Continue").  The Court granted the motion and set the sentencing hearing for October 31, 2007.  See Order, filed August 16, 2007 (Doc. 41).

The USPO concluded work on the PSR on August 23, 2007, and disclosed the PSR to all parties that same date.  See PSR at 2.  To Chatto's disappointment, in paragraph 23 of the PSR, the USPO enhanced Chatto's offense level by 5 levels based on an allegation that he had engaged in similar contact on another occasion.  See PSR ¶ 23, at 7.  The alleged similar conduct was the sexual conduct alleged in Count 2 of the Indictment.

Subsequent to the PSR's disclosure, Chatto's counsel contacted the USPO by telephone to discuss the increase assessed in paragraph 23 of the PSR.  See Addendum at 1.  At that time, Chatto's counsel reported that he would be contacting the Assistant United States Attorney assigned to the case to discuss possible objections, evidentiary proceedings, or additional sentencing stipulations, and specifically, the inapplicability of the Repeat and Dangerous Sex Offender Against Minors provision under U.S.S.G. § 4B1.5.  See id.

On September 27, 2007, Chatto filed an Unopposed Motion to Continue Sentencing.  See Unopposed Motion to Continue Sentencing, filed September 27, 2007 (Doc. 42)("Motion to Continue 2").  Chatto stated that, if the parties were unable to resolve the enhancement dispute, an evidentiary hearing would be required, at which the child victim would have to come to the Court and testify.  See id. at 2.  Chatto represents that the parties specifically addressed the concern about the victim testifying when they negotiated the plea, and that the parties reached the plea agreement in an effort to avoid adding any additional trauma to the child as well as to obviate the possibility

-4-

that the child will recant her testimony under the pressure of the courtroom.  See id.

The Court granted the motion to continue on October 19, 2007. See Order, filed October 19, 2007 (Doc. 43).  The Court reset the sentencing hearing for December 18, 2007.  See id.  On December 12, 2007, Chatto again moved to vacate his sentencing hearing.  See Unopposed Motion to Continue Sentencing, filed December 12, 2007 (Doc. 44).  The Court granted that motion and set the hearing for February 13, 2008. See Order, filed December 14, 2007 (Doc. 45).

On January 30, 2008, Chatto filed his objections to the PSR.  See Objections to Pre-Sentence Report, filed January 30, 2008 (Doc. 46)("Defendant's Objections"). His specific objection is to the 5-level enhancement based on the allegation of similar conduct, which he contends is unsupported. See Defendant's Objections at 1-2.  Chatto's counsel reports the parties agreed in the non-binding plea agreement to specific stipulations, the sentencing range, and the recommended sentence. See id.  Chatto also requested an evidentiary hearing. See Defendant's Objections at 2 (stating "the Defendant requests the Court disallow the enlargement and requests an evidentiary hearing regarding the unsupported allegations which raises his offense level by five (5) levels.").

In his objections, Chatto notes that, based on the USPO's representation, it appears that neither the victim nor the victim's family have responded to the USPO's request for information regarding the allegations against Chatto.  See Defendant's Objections at 2.  At the sentencing hearing, Chatto's counsel stated that "the situation is that the information that probation has relied upon came from the conversations that the agents had with the defendant following in about April 2006 and then also the statements of the victim made at that time but not anything sort of contemporaneous with the preparation of the PSR."  Transcript of Hearing at 4:15-20 (taken April

27, 2008)(Davis)("Tr.").[1]  Chatto's counsel stated that Chatto's objection was that the USPO was "basically taking statements made by the victim that were never followed [up] on, really in my opinion[,] were not part of the case, [and] were not contemplated by the parties when they negotiated the plea agreement."  Tr. at 4:21-25 (Davis).

On February 5, 2008, the USPO disclosed an Addendum addressing Chatto's objections to the PSR.  See Addendum.  In its Addendum, the USPO maintained that it had accurately assessed all applicable Guideline provisions and that the 5-level enhancement under U.S.S.G. § 4B1.5(b)(1) was appropriately added.  See id. at 1-2.  On February 7, 2008, Chatto filed an unopposed motion to continue the February sentencing hearing and stated that, if the parties were unable to resolve the dispute regarding his objection, an evidentiary hearing would be needed.  See Unopposed Motion to Continue Sentencing, filed February 7, 2008 (Doc. 47).  On February 11, 2008, the Court granted that motion and rescheduled the sentencing hearing for March 27, 2008.  See Order, filed February 11, 2008 (Doc. 48).

Accordingly, the Court held a sentencing hearing on March 27, 2008, regarding the allegedly unsupported allegations that could potentially raise Chatto's offense level by 5 levels.  At the sentencing hearing, the United States did not oppose Chatto's objection.  The Assistant United States Attorney told the Court that he had taken over the prosecution of Chatto's case several months ago and that, in reviewing the file and correspondence of the parties, it had become clear to him that the parties had not contemplated this enhancement in their plea agreement.  See Tr. at 5:4-11 (Torrez).  The Assistant United States Attorney also told the Court that, through his investigations, he discovered that one of the reasons that this enhancement was not included in the original plea

_____

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

negotiations was because there was "difficulty with the victim" and getting her to testify for purposes of this enhancement. Id. 5:12-6:2 (Torrez). Thus, the United States represented that it was not seeking to enforce the enhancement and that it was not going to offer proof to support the enhancement. See id. at 6:10-14 (Torrez).

### PROOF OF ENHANCEMENTS UNDER THE GUIDELINES

The court may consider, as relevant conduct, actions that did not result in a conviction. Pursuant to U.S.S.G. § 6A1.3, Commentary, evidentiary standards lower than a beyond a reasonable doubt are permitted to show relevant conduct.  The court may rely upon reliable hearsay information, so long as there as the evidence meets the preponderance-of-the-evidence standard. The evidence and information  upon which the court relies, however, must have sufficient indicia of reliability.

### 1.    Law Regarding Standard of Proof for Prior Convictions.

The United States Court of Appeals for the Tenth Circuit requires that the United States must establish the fact of a prior conviction only by a preponderance of the evidence.  See United States v. Cooper, 375 F.3d 1041, 1052 (10th Cir. 2004)(stating, "[w]henever a prior conviction is relevant to sentencing, the government must establish the fact of that conviction by a preponderance of the evidence." (citing  United States v. Simpson, 94 F.3d 1373, 1381 (10th Cir.1996))).  Cf. United States v. Easterling,  137 Fed.Appx. 143, 147 (10th Cir. 2005)(holding that determination "whether a prior felony constitutes a serious drug offense under the [Armed Career Criminal Act] is a question of law not fact, and thus there is no requirement that the existence of such prior convictions be charged in the indictment or proven to a jury under a beyond a reasonable doubt standard.").  The United States Court of Appeals for the Ninth Circuit, however, follows a different approach.  See United States v. Snellenberger, 493 F.3d 1015, 1020 (9th Cir. 2007)(noting the "government's

evidentiary burden of clearly and unequivocally establishing the facts underlying a prior conviction so as to justify the enhancement of a criminal sentence").  The Ninth Circuit has stated that "[d]ue process is generally satisfied by using a preponderance of the evidence standard to prove sentencing factors that are set forth in the [Guidelines] . . . . However, when a sentencing factor has an extremely disproportionate effect on the sentence, the government must prove the sentencing enhancement by clear and convincing evidence."  United States v. Bonilla-Montenegro, 331 F.3d 1047, 1049-50 (9th Cir. 2003)(citations omitted).

In a sentencing proceeding, the United States need only prove the existence of a fact relevant to sentencing by a preponderance of the evidence, rather than beyond a reasonable doubt. The recent upheaval in federal sentencing jurisprudence has not affected the applicable standard for sentencing proceedings in the Tenth Circuit.  The practice is, in essence, an artifact of the lower burden of proof that has always been applicable to sentencing proceedings.

### a.   The Supreme Court's Relevant Conduct Jurisprudence.

In Witte v. United States, 515 U.S. 389 (1995), the Supreme Court upheld the use of uncharged conduct at sentencing against a double-jeopardy challenge. The defendant in Witte v. United States had been involved in an unsuccessful 1990 attempt to import marijuana and cocaine into the United States, and a 1991 attempt to import marijuana. See id. at 392-93. In March 1991, a federal grand jury indicted the defendant for attempting to possess marijuana with intent to distribute in association with the defendant's latter attempt to import narcotics.  See id. At sentencing, the district court concluded that, because the 1990 attempt was part of the same continuing conspiracy, it was relevant conduct under U.S.S.G. § 1B1.3 and therefore calculated the defendant's base offense level based on the aggregate amount of drugs involved in both the 1990 and 1991 episodes. See Witte v. United States, 515 U.S. at 394.

-8-

In September 1992, a second federal grand jury indicted the defendant for conspiring and attempting to import cocaine in association with the 1990 activities. See id. The defendant moved to dismiss the indictment, arguing that he had already been punished for the cocaine offenses because the district court had considered those offenses relevant conduct at the sentencing for the 1991 marijuana offense. See id. at 395. The district court agreed and dismissed the indictment, holding that punishment for the cocaine offenses would violate the Double Jeopardy Clause's prohibition against multiple punishments. See id. The United States Court of Appeals for the Fifth Circuit reversed the district court and held that "the use of relevant conduct to increase the punishment of a charged offense does not punish the offender for the relevant conduct." United States v. Wittie, 25 F.3d 250, 258 (5th Cir. 1994). In reaching this holding, the Fifth Circuit acknowledged that its conclusion was contrary to other Circuit Courts of Appeals, including the Tenth Circuit, that had previously considered this question. See id. at 255 & n. 19 (citing United States v. Koonce, 945 F.2d 1145 (10th Cir. 1991)).

The Supreme Court granted certiorari to resolve the conflict between the circuits and affirmed the Fifth Circuit. See Witte v. United States, 515 U.S. at 395. In finding that the district court's consideration of the defendant's relevant conduct did not punish the defendant for that conduct, the Supreme Court concluded that "consideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted." Id. at 401. The Supreme Court reasoned that sentencing courts had always considered relevant conduct and "the fact that the sentencing process has become more transparent under the Guidelines . . . does not mean that the defendant is now being punished for uncharged relevant conduct as though it were a distinct criminal offense." Id. at 402. Sentencing enhancements do not punish a defendant for uncharged offenses; rather, they reflect Congress'

policy judgment "that a particular offense should receive a more serious sentence within the authorized range if it was either accompanied by or preceded by additional criminal activity." Witte v. United States, 515 U.S. at 403.

In United States v. Watts, 519 U.S. 148 (1997), the Supreme Court, in a per curiam opinion, relied upon the holding of Witte v. United States and upheld a sentencing judge's use of conduct for which the defendant had been acquitted against a double-jeopardy challenge. In reaching its result in United States v. Watts, the Supreme Court noted that its conclusion was in accord with every Circuit Court of Appeals -- other than the Ninth Circuit -- and that each had previously held that a sentencing court may consider conduct for which the defendant had been acquitted, if the government establishes that conduct by a preponderance of the evidence. See id. at 149 (citing, among other authorities, United States v. Coleman, 947 F.2d 1424, 1428-29 (10th Cir. 1991)).

There were two Ninth Circuit cases on appeal in United States v. Watts. See United States v. Putra, 78 F.3d 1386 (9th Cir. 1996); United States v. Watts, 67 F.3d 790 (9th Cir. 1995). In United States v. Watts, a jury convicted Vernon Watts of possessing cocaine with intent to distribute, but acquitted him of using a firearm in relation to a drug offense. See id. at 149-50. Despite Watts' acquittal on the firearms count, the district court found, by a preponderance of the evidence, that Watts had possessed guns in connection with the drug offense and, at sentencing, added 2 offense levels to his base-offense level pursuant to U.S.S.G. § 2D1.1(b)(1). See id. at 150. The Ninth Circuit vacated the sentence, holding that "a sentencing judge may not, 'under any standard of proof,' rely on facts of which the defendant was acquitted." Id. (quoting United States v. Watts, 67 F.3d 790, 797 (9th Cir. 1995))(emphasis in original).

The second case on appeal, United States v. Putra, involved a defendant, Cheryl Putra, whom authorities had videotaped selling cocaine to a government informant on two separate occasions. See

United States v. Watts, 519 U.S. at 150. The jury convicted Putra of aiding-and-abetting possession with intent to distribute one ounce of cocaine in association with the first sale, but acquitted her of aiding-and-abetting possession with intent to distribute five ounces of cocaine in association with the second transaction.  At the sentencing hearing, the district court determined that the United States had proved, by a preponderance of the evidence, that Putra had been involved in both sales, explained that the second sale was relevant under U.S.S.G. § 1B1.3, and aggregated the amounts of both sales to calculate Putra's base offense level under the Guidelines. See United States v. Watts, 519 U.S. at 151. "Reasoning that the jury's verdict of acquittal manifested an 'explicit rejection' of Putra's involvement in the [second] transaction," the Ninth Circuit reversed and vacated the sentence.  Id. (quoting United States v. Putra, 78 F.3d at 1389).

The Supreme Court began its analysis in United States v. Watts with 18 U.S.C. § 3661: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. See United States v. Watts, 519 U.S. at 151. According to the Supreme Court, 18 U.S.C. § 3661 embodies the codification of "the longstanding principle that sentencing courts have broad discretion to consider various kinds of information" and that "the Guidelines did not alter this aspect of the sentencing court's discretion." United States v. Watts, 519 U.S. at 151-52. The Supreme Court distinguished the different limitations on the presentation of evidence at trial and at sentencing: "Highly relevant -- if not essential -- to [the judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." Id. (quoting Williams v. New York, 337 U.S. 241, 247 (1949)). The Supreme Court noted that, "under the pre-Guidelines sentencing regime, it was 'well established that a sentencing judge may take into account facts

introduced at trial relating to other charges, even ones of which the defendant has been acquitted.'" United States v. Watts, 519 U.S. at 152 (quoting United States v. Donelson, 695 F.2d 583, 590 (D.C. Cir. 1982)(Scalia, J.)).

The Supreme Court in United States v. Watts then turned to the Guidelines. The Supreme Court acknowledged that the Guidelines, like 18 U.S.C. § 3661, articulate "in sweeping language the conduct that a sentencing court may consider in determining the applicable guideline range." United States v. Watts, 519 U.S. at 152-53 (citing U.S.S.G. § 1B1.3). The Supreme Court appeared to be persuaded by the Guidelines' conclusion that, at least for offenses involving "a pattern of misconduct that cannot readily be broken down into discrete, identifiable units that are meaningful for purposes of sentencing," U.S.S.G. § 1B1.3 cmt. background, "relying on the entire range of conduct, regardless of the number of counts that are alleged or on which a conviction is obtained, appears to be the most reasonable approach to writing workable guidelines for these offenses." United States v. Watts, 519 U.S. at 153 (citing U.S.S.G. §1B1.3 cmt., backg'd)(emphasis added in United States v. Watts).  Considering 18 U.S.C. § 3661 and the Guidelines in totality, the Supreme Court stated that, "[i]n short, we are convinced that a sentencing court may consider conduct of which a defendant has been acquitted." United States v. Watts, 519 U.S. at 154.

Relying on its earlier decision in Witte v. United States, the Supreme Court in United States v. Watts went on to explain why its ruling did not violate the Double-Jeopardy Clause.  The Supreme Court in United States v. Watts reaffirmed its holding that "sentencing enhancements do not punish a defendant for crimes of which he was not convicted, but rather increase his sentence because of the manner in which he committed the crime of conviction." 519 U.S. at 154 (citing Witte v. United States, 515 U.S. at 395).

The Supreme Court in United States v. Watts criticized the Ninth Circuit for "fail[ing] to

appreciate the significance of the different standards of proof that govern at trial and sentencing," and stated that "acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt." 519 U.S. at 155 (quoting United States v. One Assortment of 89 Firearms, 465 U.S. 354, 361 (1984)). The Supreme Court agreed with the dissenting judge in United States v. Putra, the Honorable J. Clifford Wallace, then-Chief United States Circuit Judge, and adopted the proposition that "it is impossible to know exactly why a jury found a defendant not guilty on a certain charge." United States v. Watts, 519 U.S. at 155. The Supreme Court in United States v. Watts reasoned that, because "[a]n acquittal is not a finding of any fact[,] . . . [w]ithout specific jury findings, no one can logically or realistically draw any factual finding inferences." Id. (quoting United States v. Putra, 78 F.3d at 1394 (Wallace, C.J., dissenting)).

Because the jury's verdict was dispositive regarding only whether there was a reasonable doubt as to the defendant's guilt, the Supreme Court in United States v. Watts concluded that "an acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof." 519 U.S. at 156 (quoting Dowling v. United States, 493 U.S. 342, 349 (1990)). The Supreme Court acknowledged, however, "a divergence of opinion among the Circuits as to whether, in extreme circumstances, relevant conduct that would dramatically increase the sentence must be based on clear and convincing evidence." United States v. Watts, 519 U.S. at 156. In footnote two, the Supreme Court cited cases from the Supreme Court and from the First, Second, Third, Seventh, Eighth, Ninth, and the District of Columbia Circuits that suggested that clear-and-convincing evidence might be required for judicial findings that result in extraordinary-sentence enhancements. See id. at 156 n.2. The Tenth Circuit, however, has rejected a higher standard and created the split in the circuits. See United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1990)("At least as concerns making guideline

-13-

calculations the issue of a higher than a preponderance standard is foreclosed in this circuit."). In the end, the Supreme Court in United States v. Watts reversed the Ninth Circuit and held that even "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." 519 U.S. at 157.

In United States v. Watts, Justices Stevens and Kennedy filed separate dissenting opinions. In his dissent, Justice Stevens conceded that 18 U.S.C. § 3661 supports the per curiam opinion's "narrow holding that sentencing courts may sometimes 'consider conduct of the defendants underlying other charges of which they had been acquitted,'" but countered that the statute "sheds no light on whether the district judges' application of the Guidelines in the manner presented in these cases was authorized by Congress, or is allowed by the Constitution." 519 U.S. at 161 (Stevens, J., dissenting). Justice Stevens noted that, "[b]y their own terms, the Guidelines incorporate the broadly inclusive language of [U.S.C.] § 3661 only into those portions of the sentencing decision in which the judge retains discretion." Id. at 162 (Stevens, J., dissenting). Justice Stevens concluded that, if the evidence upon which a defendant was acquitted is used to increase the defendant's base offense level, it should be proven beyond a reasonable doubt. Id. at 162 n.2 (Stevens, J. dissenting)("Since Watts' base offense level was increased by this evidence, I believe it should have been proved beyond a reasonable doubt."). Justice Stevens distinguished Watts' and Putra's cases from the Supreme Court's decision in McMillan v. Pennsylvania, 477 U.S. 79 (1986), a case in which the defendant's minimum sentence was enhanced on the basis of a fact proved by preponderance of the evidence. In McMillan v. Pennsylvania, the Supreme Court upheld a Pennsylvania sentencing provision that established a minimum sentence of five-years imprisonment if the sentencing judge found by a preponderance of the evidence that a defendant convicted of

certain enumerated felonies visibly possessed a firearm during the commission of the offense. <u>See</u> 477 U.S. at 80.

Justice Stevens distinguished <u>McMillan v. Pennsylvania</u> from the facts in <u>United States v. Watts</u>, because, under the sentencing scheme in <u>McMillan v. Pennsylvania</u>, the maximum sentence was unchanged by the judge's finding. <u>See</u> <u>United States v. Watts</u>, 519 U.S. at 166 (Stevens, J., dissenting). Justice Stevens noted that the actual sentence imposed upon the defendant in <u>McMillan v. Pennsylvania</u> "was within the range that would have been available to the judge even if the enhancing factor had not been proved." <u>United States v. Watts</u>, 519 U.S. at 166 (Stevens, J., dissenting).  Justice Stevens reasoned that "the holding [in <u>McMillan v. Pennsylvania</u>] should not be extended to allow a fact proved by only a preponderance to increase the entire range of penalties within which the sentencing judge may lawfully exercise discretion." <u>United States v. Watts</u>, 519 U.S. at 166 (Stevens, J., dissenting). Justice Stevens concluded his dissent:

> Whether an allegation of criminal conduct is the sole basis for punishment or merely one of several bases for punishment, we should presume that Congress intended the new sentencing Guidelines that it authorized in 1984 to adhere to longstanding procedural requirements enshrined in our constitutional jurisprudence. The notion that a charge that cannot be sustained by proof beyond a reasonable doubt may give rise to the same punishment as if it had been so proved is repugnant to that jurisprudence.

<u>Id.</u> at 169-70.

Justice Kennedy, writing separately in dissent, echoed Justice Stevens' concerns and criticized the per curiam opinion for failing to address distinctions between uncharged conduct, like that addressed in <u>Witte v. United States</u>, and conduct related to a charge for which the defendant was acquitted. <u>See</u> <u>United States v. Watts</u>, 519 U.S. at 170 (Kennedy, J., dissenting). Justice Kennedy expressed concern that, at a minimum, "increas[ing] a sentence based on conduct underlying a charge for which the defendant was acquitted does raise concerns about undercutting the verdict of

acquittal." Id.

> **b.      The Tenth Circuit's Relevant Conduct Jurisprudence.**

Tenth Circuit caselaw adheres closely to the Supreme Court's results in Witte v. United States and United States v. Watts.   In United States v. Coleman, 947 F.2d 1424 (1991), the defendant, Troy Coleman, appealed the district court's enhancement of his sentence for firearms possession after he was convicted of conspiracy to possess and possession of a controlled substance with intent to distribute, but was acquitted of using or carrying a firearm during and in relation to a drug trafficking crime. See id. at 1428. The Tenth Circuit acknowledged that courts had taken various positions whether a sentence may be enhanced for firearms possession despite a defendant's acquittal of firearms charges.  See id. at 1428-29 (citing United States v. Duncan, 918 F.2d 647, 652 (6th Cir. 1990)("[A]n acquittal on a firearms carrying charge leaves ample room for a district court to find by the preponderance of the evidence that the weapon was possessed during the drug offense."); United States v. Rodriguez, 741 F. Supp. 12, 13-14 (D.D.C. 1990)(refusing to apply 2-level enhancement for firearms possession, because "[t]o add at least 27 months to the sentence for a charge of which the defendant was found not guilty violates the constitutional principle of due process and the ban against double jeopardy").

Without discussion related to the standard of proof a sentencing court should use to make factual findings, the Tenth Circuit in United States v. Coleman ruled that the district court did not err in enhancing Coleman's sentence for possession of a firearm. The Tenth Circuit based its conclusion on evidence that: (i) two weapons had been located at the arrest scene; (ii) the weapons were handled at will by individuals who lived at the house; and (iii) the weapons were kept for the protection of conspiracy participants and the narcotics involved.  See id. at 1429. The Tenth Circuit summarized that, in reviewing federal caselaw, it found "persuasive the decisions that have allowed

a sentencing court to consider trial evidence that was applicable to a charge upon which the defendant was acquitted." Id.

In United States v. Washington, 11 F.3d 1510 (10th Cir. 1993), the defendant, Patrick Washington, argued that drug quantities used as relevant conduct to establish a defendant's offense level should be proven by clear-and-convincing evidence rather than by a preponderance of the evidence.  See 11 F.3d at 1512. Washington objected to his sentencing, because the drug quantity the district court considered as relevant conduct, and which the court found by a preponderance of the evidence, increased his guideline sentence range from 210 to 262 months, to life. Washington argued "that because the additional drug quantities effectively resulted in a life sentence a higher standard of proof should be required." Id. at 1515.

Although the Tenth Circuit in United States v. Washington "recognize[d] the strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof," id. at 1516, it held that "the Due Process Clause does not require sentencing facts in the ordinary case to be proved by more than a preponderance standard," 11 F.3d at 1516 (citing McMillan v. Pennsylvania, 477 U.S. at 84). While the phrase "ordinary case" might suggest there are exceptions, the Tenth Circuit's remaining language indicated that it was shutting the door on that possibility. The Tenth Circuit concluded that, "[a]t least as concerns making guideline calculations[,] the issue of a higher than a preponderance standard is foreclosed in this circuit." United States v. Washington, 11 F.3d at 1516.  Finally, more recent Tenth Circuit decisions -- issued subsequent to the Supreme Court's holdings in Witte v. United States and United States v. Watts -- have reaffirmed the Tenth Circuit's position regarding the sentencing court's consideration of relevant conduct. See United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a

sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitled the defendant to a clear-and-convincing evidence standard at sentencing, and noting that this argument was "foreclosed by binding precedent" in the Tenth Circuit); United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(same).

        c.      **Sixth Amendment Jurisprudence.**

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court reaffirmed the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by statute." 530 U.S. at 481. The Supreme Court cautioned, however, that the Constitution limited this discretion and that the Sixth Amendment requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. In Blakely v. Washington, the Supreme Court elaborated on its holding in Apprendi v. New Jersey, stating that the "statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v. Washington, 542 U.S. at 303 (additional emphasis removed)(internal quotations and citations omitted). In United States v. Booker, the Supreme Court expanded its earlier holdings to apply to sentencing enhancements that exceeded maximum sentences under the Sentencing Guidelines. See 543 U.S. at 239 ("Regardless of whether the legal basis of the accusation is in a statute or in guidelines promulgated by an independent commission, the principles behind the jury trial right are equally applicable.").

The majority opinions in Apprendi v. New Jersey, and Blakely v. Washington, and in the constitutional majority in United States v. Booker, reflect the Supreme Court's concern that

sentencing enhancements based on uncharged, dismissed, and acquitted crimes may undermine, if not directly contravene, many of the fundamental components of the adversary system that the Framers intended -- specifically notice, jury trial, and proof beyond a reasonable doubt.  See United States v. Booker, 543 U.S. at 238 ("[T]he Framers would not have thought it too much to demand that, before depriving a man of [ten] more years of his liberty, the State should suffer the modest inconvenience of submitting its accusation to 'the unanimous suffrage of twelve of his equals and neighbors,' rather than a lone employee of the State.")(quoting Blakely v. Washington, 542 U.S. at 313).  Justice Scalia noted in Blakely v. Washington that sentencing factors cannot be elevated to the "tail which wags the dog of the substantive offense." 542 U.S. at 307 (quoting McMillan v. Pennsylvania, 477 U.S. at 88).  Justice Scalia explained that this threshold would be crossed when legislatures -- and presumably the federal Sentencing Commission -- enact sentencing mechanisms that exceed "the judicial estimation of the proper role of the judge."  Blakely v. Washington, 542 U.S. at 307.

In United States v. Booker, the Supreme Court expressly rejected, however, any argument that its holding was inconsistent with its earlier holding in United States v. Watts.  See United States v. Booker, 543 U.S. at 240 & 240 n.4. In his majority opinion in United States v. Booker, Justice Stevens -- joined by Justices Scalia, Souter, Thomas, and Ginsburg – described the issue in United States v. Watts as "a very narrow question regarding the interaction of the Guidelines with the Double Jeopardy Clause." United States v. Booker, 543 U.S. at 240 n.4.  Justice Stevens stated that the Supreme Court in United States v. Watts "held that the Double Jeopardy Clause permitted a court to consider acquitted conduct in sentencing a defendant under the Guidelines,"[2] but limited

---

[2]  Justice Breyer's majority opinion in United States v. Booker -- which Chief Justice Rehnquist, and Justices O'Connor, Kennedy, and Souter joined -- characterizes the scope of the

the holding by pointing out that "[i]n neither Witte [v. United States] nor [United States v.] Watts was there any contention that the sentencing enhancement had exceeded the sentence authorized by the jury verdict in violation of the Sixth Amendment." United States v. Booker, 543 U.S. at 240. Justice Stevens concluded that the issue the Supreme Court confronted in United States v. Booker "simply was not presented" in United States v. Watts. United States v. Booker, 543 U.S. at 240.

Justice Stevens' opinion in United States v. Booker asserted that the constitutional infirmity of the Guidelines' sentencing regime was not in permitting judges to consider acquitted conduct, but that the Guidelines were binding on district judges. See id. at 233. The constitutional majority in United States v. Booker indicated that there would have been no Sixth Amendment constitutional violations in the cases before them if the Guidelines were advisory. See id.

Justice Thomas, writing separately in dissent in United States v. Booker, reached a similar conclusion in finding that the Guidelines, as applied to Defendant Freddie Booker, were unconstitutional because they "required the judge to make findings that increased Booker's offense level beyond the Guidelines range authorized by the jury." Id. at 319 (Thomas, J., dissenting)(emphasis added). Justice Thomas also questioned the constitutionality of the preponderance-of-the-evidence standard as applied to fact finding underlying sentencing enhancements. In critiquing the commentary to U.S.S.G. § 6A1.3, which states that "the Commission believes that use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case," U.S.S.G. § 6A1.3 cmt., Justice Thomas countered that the Supreme Court's holding

---

holding in United States v. Watts in a very similar fashion. Justice Breyer states that the Supreme Court "held in United States v. Watts that a sentencing judge could rely for sentencing purposes upon a fact that a jury had found unproved (beyond a reasonable doubt)." United States v. Booker, 543 U.S. at 251.

in United States v. Booker "corrects this mistaken belief," 543 U.S. at 319 n.6 (Thomas, J., dissenting). Justice Thomas continued: "The Fifth Amendment requires proof beyond a reasonable doubt, not by a preponderance of the evidence, of any fact that increases the sentence beyond what could have been lawfully imposed on the basis of facts found by the jury or admitted by the defendant." Id.

Consistent with this conclusion, the Supreme Court in United States v. Booker found those provisions of the Federal Sentencing Reform Act of 1984 that made the Guidelines mandatory, see 18 U.S.C. § 3553(b)(1), or which rely upon the Guidelines' mandatory nature, see 18 U.S.C. § 3742(e), incompatible with the Sixth Amendment, see United States v. Booker, 543 U.S. at 245. Accordingly, the Supreme Court in United States v. Booker severed and excised 18 U.S.C. § 3553(b)(1) -- the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guideline range -- from the remainder of the Act, thus "mak[ing] the Guidelines effectively advisory." Id. The Supreme Court's holding in United States v. Booker "requires a sentencing court to consider Guideline ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well." Id. at 245-46.

The Supreme Court has recently confirmed that an advisory guidelines system comports with the Sixth Amendment. In Cunningham v. California, 127 S. Ct. 856 (2007), Justice Ginsburg, joined by the other four justices who had been part of the constitutional majority in United States v. Booker and Chief Justice Roberts, noted that, despite disagreement over the most appropriate method to remedy the mandatory Guidelines' constitutional infirmity, all nine justices that took part in the United States v. Booker decision agreed that "the Federal Guidelines would not implicate the Sixth Amendment were they advisory." Cunningham v. California, 127 S.Ct. at 866. The only other member of the current Supreme Court who did not participate in the United States v. Booker

decision, Justice Alito, also acknowledged in <u>Cunningham v. California</u> that the Supreme Court in <u>United States v. Booker</u> "unanimously agreed that judicial factfinding under a purely advisory guidelines system would . . . comport with the Sixth Amendment." <u>Cunningham v. California</u>, 127 S. Ct. at 874 (Alito, J., dissenting.).

Not only did making the Guidelines advisory remedy the Supreme Court's Sixth Amendment concerns, it seems to have alleviated the constitutional concerns regarding the appropriate burden of proof that existed under the mandatory system. A person who is found guilty of a crime beyond a reasonable doubt is exposed to the maximum punishment the statute of conviction allows, rather than the maximum allowed under the Guidelines, and it is therefore constitutional to sentence the guilty defendant any where within the range based on facts proved only by a preponderance of the evidence. <u>See</u>, <u>e.g.</u>, <u>Harris v. United States</u>, 536 U.S. 545, 558 (2002)("Judicial factfinding in the course of selecting a sentence within the authorized range does not implicate the indictment, jury-trial, and reasonable-doubt components of the Fifth and Sixth Amendments."). Nevertheless, since <u>United States v. Booker</u>, at least one United States Circuit Judge and several United States District Judges have concluded that sentencing based upon conduct for which the defendant was acquitted is unconstitutional. <u>See</u> <u>United States v. Faust</u>, 456 F.3d 1342, 1352 (11th Cir. 2006)(Barkett, J., specially concurring)("When a sentencing judge finds facts that could, in themselves, constitute entirely free-standing offenses under the applicable law -- that is, when an enhancement factor could have been named in the indictment as a complete criminal charge -- the Due Process Clause of the Fifth Amendment requires that those facts be proved beyond a reasonable doubt."); <u>United States v. Coleman</u>, 370 F. Supp. 2d 661, 671 (S.D. Ohio 2005)(Marbley, J.)("[T]he jury's central role in the criminal justice system is better served by respecting the jury's findings with regard to authorized and unauthorized conduct.")(emphasis in original); <u>United States v. Pimental</u>, 367 F.Supp.2d 143,

152 (D. Mass. 2005)(Gertner, J.)("To consider acquitted conduct trivializes 'legal guilt' or 'legal innocence' -- which is what a jury decides -- in a way that is inconsistent with the tenor of the recent case law."); Judge Nancy Gertner, <u>Circumventing Juries, Undermining Justice: Lessons from Criminal Trials and Sentencing</u>, 32 Suffolk U. L. Rev. 419, 436 (1999)("Actual innocence or actual guilt is less significant in a constitutional criminal justice system than legal guilt or legal innocence, adjudicated by a jury.")(hereinafter <u>Circumventing Juries</u>).

In <u>United States v. Pimental</u>, the Honorable Nancy Gertner, United States District Judge for the District of Massachusetts, discussed at length the federal sentencing scheme in the post <u>Blakely v. Washington</u> and <u>United States v. Booker</u> environment, and called for judges to apply a "beyond a reasonable doubt" standard to relevant conduct.  <u>United States v. Pimental</u>, 367 F. Supp. 2d at 153. According to Judge Gertner, both the plain language and reasoning of <u>United States v. Booker</u> "substantially undermines the continued vitality of <u>United States v. Watts</u>."  <u>United States v. Pimental</u>, 367 F. Supp. 2d at 150. Judge Gertner observed that "it makes absolutely no sense to conclude that the Sixth Amendment is violated whenever facts essential to sentencing have been determined by a judge rather than a jury, . . . and also conclude that the fruits of the jury's efforts can be ignored with impunity by the judge in sentencing." <u>United States v. Pimental</u>, 367 F. Supp. 2d at 150 (internal citation omitted).  Judge Gertner's discussion was premised on her view that "[t]he jury is intended to be the centerpiece of the criminal justice system." <u>United States v. Pimental</u>, 367 F. Supp. 2d at 150.  Quoting from her law review article, Judge Gertner stated that, determining "more than actual truth, guilt, or innocence, its decisions represent a popular conception of a 'just verdict.'" <u>Id.</u> (quoting <u>Circumventing Juries</u> at 433). Judge Gertner stated in <u>United States v. Pimental</u> that, "when a jury acquit[s] a defendant based on [the beyond-a-reasonable-doubt] standard, one would have expected no additional criminal punishment would follow." <u>United States v. Pimental</u>, 367 F.

Supp. 2d at 150 (quoting <u>Circumventing Juries</u> at 433). According to Judge Gertner, this expectation is "a matter of simple justice." <u>United States v. Pimental</u>, 367 F. Supp. 2d at 150 (quoting <u>Apprendi v. New Jersey</u>, 530 U.S. at 476.).

Judge Gertner concluded that her findings were consistent with Justice Stevens' principal opinion in <u>United States v. Booker</u>, but found that "this position, that one can consider acquitted conduct because the Guidelines are now advisory, seems to hark back to the period pre-mandatory Guidelines." <u>United States v. Pimental</u>, 367 F. Supp. 2d at 151.

> What the judge did in sentencing [before the Guidelines] -- a specialized, professional function -- was totally different from what the jury did. There was no Sixth Amendment issue, or even the requirement of full evidentiary safeguards because sentencing facts did not have binding and determinate consequences. Thus, just as during the pre-Guidelines discretionary sentencing regime, when a judge could consider acquitted conduct in the mix of sentencing facts, so he or she can do so now after [United States v.] Booker.

<u>Id.</u> at 151-52. Judge Gertner distinguished this earlier sentencing regime from sentencing under the mandatory Guidelines, because "while pre-Guideline data may have included acquitted conduct in the mix of sentencing factors, such data did not have quantifiable consequences; in a guideline regime, each fact has a determinate impact." <u>United States v. Pimental</u>, 367 F. Supp. 2d at 152 n.16 (quoting <u>Circumventing Juries</u> at 433).

Judge Gertner described the current status of federal-sentencing law as a hybrid system embodying elements of the purely discretionary pre-Guidelines sentencing and elements of the mandatory rule-based Guidelines sentencing. <u>See</u> <u>United States v. Pimental</u>, 367 F. Supp. 2d at 152. In Judge Gertner's estimation, the nature of this system "has certain consequences in terms of the significance of acquitted conduct, and more generally, the procedural protections at sentencing." <u>Id.</u> These consequences derive from the fact that "when a court considers acquitted conduct it is expressly considering facts that the jury verdict not only failed to authorize; it considers facts of

which the jury expressly disapproved." Id.  Judge Gertner also criticized the distinction jurists have

made between the jury's role of deciding guilt and the judge's task of deciding facts. Judge Gertner

contended that this distinction is disingenuous "in this hybrid regime where rules still matter, and

certain facts have important, if not dispositive, consequences." Id. at 153. Judge Gertner summarized:

"To tout the importance of the jury in deciding facts, even traditional sentencing facts, and then to

ignore the fruits of its efforts makes no sense -- as a matter of law or logic." Id.

As a result of her concern for the integrity of jury verdicts, Judge Gertner reasoned: "Even

if [United States v. ]Watts emerged unscathed from [United States v. ]Booker, and a judge may

consider all facts, including acquitted conduct, the standard of proof to be applied should be beyond

a reasonable doubt." United States v. Pimental, 367 F. Supp. 2d at 153. Because "[c]ertain facts . .

. continue to assume inordinate importance in the sentencing outcome," Judge Gertner concluded in

United States v. Pimental that "they should be tested by our highest standard of proof." Id.

As a final point, Judge Gertner asserted that, "[i]ndeed, even if the Sixth Amendment's jury

trial guarantee is not directly implicated because the regime is no longer a mandatory one, the Fifth

Amendment's Due Process requirement is." Id. Judge Gertner concluded:

> We cannot have it both ways: We cannot say that facts found by the judge are only
> advisory, that as a result, few procedural protections are necessary and also say that
> the Guidelines are critically important. If the Guidelines continue to be important, if
> facts the Guidelines make significant continue to be extremely relevant, then Due
> Process requires procedural safeguards and a heightened standard of proof, namely,
> proof beyond a reasonable doubt.

Id. at 154.

In United States v. Coleman, 370 F. Supp. 2d 661 (S.D. Ohio 2005), the Honorable Algenon

L. Marbley, United States District Judge for the Southern District of Ohio, took a position similar to

Judge Gertner in United States v. Pimental. Judge Marbley acknowledged in United States v.

Coleman that, "[i]n interpreting the practical effects of the two majority opinions in [United States v. ]Booker, most courts agree that judicial fact-finding may be made by a preponderance of the evidence so long as the court is operating in an advisory regime." United States v. Coleman, 370 F. Supp. 2d at 667. Judge Marbley disagreed with this conclusion and indicated that, in his opinion, all enhancements should be determined under the beyond a reasonable-doubt standard. See id. at 668. Nevertheless, because of what he described as compelling dicta from the United States Court of Appeals for the Sixth Circuit, and a "multi-circuit consensus," Judge Marbley stated that he would "continue to review enhancements, with the exception of those relating to acquitted conduct, by a preponderance of the evidence." Id.

Judge Marbley recognized conduct for which the defendant has been acquitted as exceptional circumstances and asserted that "the beyond a reasonable doubt standard reflects the seriousness of the determinations made within the criminal justice system, as opposed to the civil system." Id. at 668 n.8 (citing United States v. Gray, 362 F. Supp. 2d 714, 720 (S.D. W. Va. 2005)). This assertion reflected Judge Marbley's understanding that, "[t]o the extent that an enhancement detracts from a defendant's liberty, its imposition should be considered with extreme scrutiny." Id.

Similar to Judge Gertner's discussion in United States v. Pimental, Judge Marbley's analysis in United States v. Coleman was premised on his view that assessing conduct for which the defendant was acquitted against a standard less than beyond a reasonable doubt eviscerated a criminal defendant's Sixth Amendment right to a jury trial. See United States v. Coleman, 370 F. Supp. 2d at 668. Judge Marbley acknowledged that, in United States v. Watts, the Supreme Court had expressly authorized sentencing courts to consider acquitted conduct under a preponderance-of-the-evidence standard, but agreed with Judge Gertner that "[t]he viability of [United States v.] Watts . . . was questioned by Justice Stevens' constitutional majority opinion in [United States v.] Booker."

United States v. Coleman, 370 F. Supp. 2d at 669.  In United States v. Coleman, Judge Marbley noted

Justice Stevens' narrow interpretation of the Supreme Court's holding in United States v. Watts, and

the Justice's observation that, because the Supreme Court "did not even have the benefit of full

briefing or oral argument" in United States v. Watts, "[i]t is unsurprising that [the Supreme Court]

failed to consider fully the issues presented" in United States v. Booker. United States v. Coleman,

370 F. Supp. 2d at 669 (quoting United States v. Booker, 543 U.S. at 240 n.4).

Judge Marbley contended that United States v. Booker, read in the context of its predecessors

-- Jones v. United States, 526 U.S. 227 (1999), Apprendi v. New Jersey, Ring v. Arizona, 536 U.S.

584 (2002), and Blakely v. Washington -- detracts from United States v. Watts' continued validity.

See United States v. Coleman, 370 F. Supp. 2d at 670. Judge Marbley interpreted this line of cases

to stand for the proposition that "a judge's determination at sentencing must be guided by the jury

authorized verdict." Id.   According to Judge Marbley in United States v. Coleman, even Justice

Breyer's remedial opinion in United States v. Booker was not inconsistent with this conclusion,

because it "limit[ed] sentences to the jury-authorized statutory maximum" as the United States Code

defines that sentence.  United States v. Coleman, 370 F. Supp. 2d at 670.

With this background, Judge Marbley found it paradoxical that Supreme Court caselaw had

"elevated the role of the jury verdict by circumscribing a defendant's sentence to the relevant

statutory maximum authorized by a jury; yet, the jury's verdict is not heeded when it specifically

withholds authorization."  Id.  Judge Marbley then stated that he was unpersuaded by courts,

including the Tenth Circuit, that have attempted to resolve this paradox, and thereby reconcile the

holding of United States v. Watts with more recent jurisprudence, "by focusing solely on the narrow

remedial holding of Justice Breyer's opinion" in United States v. Booker.  United States v. Coleman,

370 F. Supp. 2d at 670-71.

In reaching this conclusion, Judge Marbley was critical of the Tenth Circuit's decision in United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), a case in which the Tenth Circuit upheld a sentence enhanced on the basis of conduct for which the defendant was acquitted despite acknowledging a perceived tension in a court's consideration of such conduct. The Tenth Circuit in United States v. Magallanez admitted:

> The defendant in this case might well be excused for thinking that there is something amiss, under this constitutional principle, with allowing the judge to determine facts on which to sentence him to an additional 43 months in prison in the face of a jury verdict finding facts under which he could be required to serve no more than 78 months.

Id. at 683. Despite this recognition, Judge Marbley, in United States v. Coleman, characterized the Tenth Circuit's holding in United States v. Magallanez as "upholding the sentence because [United States v.] Booker did not sever 18 U.S.C. § 3661" -- the provision which states that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." United States v. Coleman, 370 F. Supp. 2d at 671 (quoting 18 U.S.C. § 3661).

Judge Marbley was also critical of the Tenth Circuit's limited discussion of the perceptions that courts' use of conduct for which a defendant was acquitted engender.

> Although the statement about the defendant's perception of his sentence is made in passing by the [Tenth Circuit] in [United States v.] Magallanez, this Court notes that consideration of acquitted conduct has a deleterious effect on the public's view of the criminal justice system. A layperson would undoubtedly be revolted by the idea that, for example, a "person's sentence for crimes of which he has been convicted may be multiplied fourfold by taking into account conduct of which he has been acquitted." United States v. Frias, 39 F.3d 391, 393 (2d Cir. 1994)(Oakes, J., concurring). As Judge Oakes opined, "this is jurisprudence reminiscent of Alice in Wonderland . . . As the Queen of Hearts might say, "Acquittal first, sentence afterwards." Id. See also Daniel J. Freed, Federal Sentencing in the Wake of Guidelines: Unacceptable Limits on the Discretion of Sentencers, 101 Yale L.J. 1681, 1714 (1992)("Most lawyers, as

well as ordinary citizens unfamiliar with the daily procedures of criminal law administration, are astonished to learn that a person in this society may be sentenced to prison on the basis of conduct of which a jury has acquitted him, or on the basis of charges that did not result in conviction.").

United States v. Coleman, 370 F. Supp. 2d at 671 n.14.  Because Judge Marbley found that "the jury's central role in the criminal justice system is better served by respecting the jury's findings with regard to authorized and unauthorized conduct," he found the Tenth Circuit's reasoning in United States v. Magallanez unpersuasive.  United States v. Coleman, 370 F. Supp. 2d at 671.

Judge Marbley also recognized collateral consequences of enhancing sentences based on acquitted conduct. He noted that enhancements "would not only affect Defendants' liberty by lengthening the sentences imposed, but would also result in the 'heightened stigma associated with an offense the legislature has selected as worthy of greater punishment.'" United States v. Coleman, 370 F. Supp. 2d at 672 (quoting Apprendi v. New Jersey, 530 U.S. at 467).  Judge Marbley stated that, by so using enhancements, "[t]he legal innocence associated with acquittal would be summarily eviscerated."  Id.  Moreover, Judge Marbley contended that "consideration of acquitted conduct skews the criminal justice system's power differential too much in the prosecution's favor."  United States v. Coleman, 370 F. Supp. 2d at 672. In Judge Marbley's view, consideration of acquitted conduct permitted the prosecution "a second bite at the apple," and "allow[ed] the government to perfect its case and ready it for re-litigation at the sentencing 'mini-trial.'" Id.

Finally, Judge Marbley acknowledged that his result was not without any potential drawbacks. Judge Marbley stated that he was "cognizant that a negative consequence of refusing to consider acquitted conduct is the possibility that 'eliminating the availability of acquitted conduct evidence at sentencing might alter prosecutorial charging decisions.'"  Id. at 673 (internal quotation omitted). This potential result is because prosecutors might decline to bring certain charges because they fear

those charges may result in acquittal and, instead, wait to bring facts supporting those charges to the court's attention as relevant conduct at sentencing.  See id.  While Judge Marbley refused to minimize the import of this concern, he argued that "it simply does not justify overriding jury verdicts of acquittal." Id.

Despite these concerns that judges around the nation have raised, the Tenth Circuit has spoken clearly that it does not agree with their position.  In United States v. Magallanez, one of the cases that Judge Marbley criticized in United States v. Coleman, the Tenth Circuit held that Blakely v. Washington and United States v. Booker had not changed the district court's enhancement-findings analysis, and that United States v. Watts retained vitality. See United States v. Magallanez, 408 F.3d at 684-85.  United States v. Magallanez involved plain-error review of a drug sentence in which a jury found the defendant, Pete Magallanez, guilty of conspiracy to possess with intent to distribute and to distribute methamphetamine. See id. at 676. As part of its verdict, the jury, through special interrogatory, attributed to the defendant 50-500 grams of methamphetamine; at sentencing, however, the judge -- based on testimony of the various amounts that government witnesses indicated they had sold to the defendant -- attributed 1200 grams of methamphetamine to the defendant and used that amount to increase his sentence under the Guidelines. See id. at 682. The district court's findings increased the defendant's Guideline sentencing range from 63 to 78 months to 121 to 151 months. See id. at 682-83.

Magallanez argued that the district court's additional findings with respect to the amount of drugs attributable to him violated Blakely v. Washington. See id. at 683. On appeal, Magallanez argued that Blakely v. Washington and United States v. Booker required the district court to accept the jury's special finding of drug quantity for sentencing purposes. See United States v. Magallanez, 408 F.3d at 683.

The Tenth Circuit in United States v. Magallanez admitted that, "[a]t first blush, there might seem to be force to [Magallanez'] argument," and noted that "[t]he constitutional violation identified in Blakely [v. United States] and [United States v.] Booker, after all, was the Sixth Amendment right to trial by jury." United States v. Magallanez, 408 F.3d at 683. The Tenth Circuit countered, however, that, both before and after Congress' passage of the Sentencing Reform Act, "sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict." Id. at 684. The Tenth Circuit in United States v. Magallanez cited United States v. Watts and stated that, in that case, it was significant that the Supreme Court had held that the Ninth Circuit's decisions conflicted not only with the Sentencing Guidelines, but with the "clear implications of 18 U.S.C. § 3661." United States v. Magallanez, 408 F.3d at 684 (quoting United States v. Watts, 519 U.S. at 149). The Tenth Circuit reasoned that, because the Supreme Court had stated, in United States v. Watts, that the Guidelines did not alter the unlimited nature of the information 18 U.S.C. § 3661 authorized sentencing courts to consider, "it follows that the [Supreme] Court's partial invalidation of the Guidelines in [United States v.] Booker could not have altered it, either." United States v. Magallanez, 408 F.3d at 684 (citing United States v. Watts, 519 U.S. at 152).

The Tenth Circuit supported its conclusion by arguing that the decision in United States v. Watts "was predicated on the rationale that 'different standards of proof . . . govern at trial and sentencing.'" United States v. Magallanez, 408 F.3d at 684 (quoting United States v. Watts, 519 U.S. at 155). The Tenth Circuit continued by acknowledging the Supreme Court's recognition in United States v. Watts that "[a]n acquittal by the jury proves only that the defendant was not guilty beyond a reasonable doubt," and that, "[b]oth before and under the Guidelines, facts relevant to sentencing have generally been found by a preponderance of the evidence." United States v. Magallanez, 408

F.3d at 684 (citing United States v. Watts, 519 U.S. at 156). Consistent with this interpretation of United States v. Watts, the Tenth Circuit held that "[a] jury verdict of acquittal on related conduct, therefore, 'does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence.'" United States v. Magallanez, 408 F.3d at 684 (quoting United States v. Watts, 519 U.S. at 157).

In a footnote to its opinion in United States v. Magallanez, the Tenth Circuit acknowledged Justice Stevens' language in United States v. Booker -- the language that Judge Marbley references in United States v. Coleman -- that calls into question the vitality of United States v. Watts after the Supreme Court's decision in United States v. Booker.  See United States v. Magallanez, 408 F.3d at 684 n.1. The Tenth Circuit concluded, however, that, because Justice Stevens, in United States v. Booker, distinguished United States v. Watts, and stated that "[n]one of our prior cases is inconsistent with today's decision," United States v. Booker, 543 U.S. at 241, United States v. Watts "remains good law, and it is not the place of an inferior court to overrule it," United States v. Magallanez, 408 F.3d at 684 n.1. Consequently, the Tenth Circuit concluded "[n]othing in [United States v.]Booker changes this analysis." United States v. Magallanez, 408 F.3d at 684.

To the contrary, the Tenth Circuit noted that, "18 U.S.C. § 3661, which underlay the decision in [United States v.]Watts, remains in full force." United States v. Magallanez, 408 F.3d at 684. Although United States v. Booker made the Guidelines "effectively advisory," the Tenth Circuit in United States v. Magallanez reaffirmed that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before." United States v. Magallanez, 408 F.3d at 685 (internal citation omitted). In the Tenth Circuit's estimation, "the only difference is that the court has latitude, subject to reasonableness review, to depart from the resulting Guideline ranges." Id.

### U.S.S.G. § 4B1.5(b)(1)

U.S.S.G.  § 4B1.5(b)(1) states in relevant part:

> (b) In any case in which the defendant's instant offense of conviction is a covered sex crime, neither § 4B1.1 nor subsection (a) of this guideline applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct:
>
> (1) The offense level shall be 5 plus the offense level determined under Chapters Two and Three. However, if the resulting offense level is less than level 22, the offense level shall be level 22, decreased by the number of levels corresponding to any applicable adjustment from § 3E1.1.

U.S.S.G. § 4B1.5(b)(1).  Under U.S.S.G. § 4B1.5(b)(1), the defendant "engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." U.S.S.G. § 4B1.5(b)(1), app.n. 4. "An occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion." U.S.S.G. § 4B1.5(b)(1), app.n. 4.

### ANALYSIS

Despite Chatto's guilty plea to Count 1 and the dismissal of Count 2, the Court is not, pursuant to U.S.S.G. § 1B1.4 and 18 U.S.C. § 3661, restricted from consideration of charged, uncharged, or dismissed conduct.  See U.S.S.G. § 1B1.4; 18 U.S.C. § 3661. On the other hand, Chatto, through his counsel, objects to the 5-level increase assessed, pursuant to U.S.S.G. § 4B1.5(b)(1),  in paragraph 23 of the PSR.  See Defendant's Objections.  The question is whether the United States has, by a preponderance of the evidence, proven that the second incident took place.

The allegations in the Indictment, and what Chatto reportedly said to the agents, would, if true, appear to constitute two separate sexual acts by him upon the victim's body.  See Indictment at 1-2; Addendum at 2.  If those two acts are established by a preponderance of the evidence,

application of U.S.S.G. § 4B1.5(b)(1) appears to be warranted, as Chatto would have engaged in a pattern of activity involving prohibited sexual acts with a minor.  See  U.S.S.G. § 4B1.5(b)(1).

Moreover, there is reliable evidence in the record to support these allegations.  See Indictment at 1-2; Addendum at 2.  The information presented to the grand jury appears to have been factually sufficient to warrant an Indictment in Counts 1 and 2.  See Indictment at 1-2.  While the Court does not have a transcript of the testimony  before the grand jury, it appears that, at the time of the grand-jury presentment, the information provided by the United States would probably have included witness testimony as corroborated by various witness statements.  See Addendum at 2.  Moreover, the USPO made its assessment of this guideline application based on the victim's statements to school counselors, investigators, and persons in the United States Attorney's Office.  See id.  Finally, there is evidence that Chatto admitted to at least two separate sexual acts where he fondled the victim above her clothing, and another sexual act where he digitally penetrated the victim. See id.  Based on sentencing accountability being broader than legal liability, the USPO reasonably considered the conduct from the second incident in establishing the appropriate sentencing guideline range.  See U.S.S.G. § 1B1.4 and 18 U.S.C. § 3661.

Nevertheless, the Court finds that the United States has not proven this enhancement by a preponderance of the evidence.  In situations such as the present one, the Court must rely, to a considerable extent, upon the inquiry that the United States Attorney's Office may want to make when it presents witness testimony and introduces any physical evidence in Court before sentencing. While the Court should not defer to the United States to the extent that the Court ignores facts in the record which support an enhancement, when the defendant, as here, insists upon strict proof of the facts supporting an enhancement, the Court must rely upon the United States to make its case by a preponderance of the evidence.

-34-

Here, the United States opposes the enhancement.  See Tr. at 5:6:14 (Torrez). It presented no witnesses or evidence to support the second incident.  The victim did not come to Court or testify. Under these circumstances, the Court does not believe that the United States has proven the enhancement by a preponderance of the evidence.  While the Court should not and will not speculate why the victim, the counselors, and the agents did not testify, the Court is cognizant that the United States entered into the plea agreement in large part to avoid having the victim testify.  The United States may have made a rational decision to not have her testify at sentencing to avoid losing the conviction that it has secured.  In any case, given the circumstances, the Court must hold the United States to its burden of proof, and in this case, the United States has not met that burden.

The Court concludes that the allegations of similar conduct remain unsupported or inadequately supported.  In conclusion, the United States did not prove, by a preponderance of the evidence, that the enhancement should apply.  Accordingly, the Court will disallow the enhancement.

**IT IS ORDERED** that the Defendant's request for an evidentiary hearing is granted and his Objections to the Presentence Report are sustained.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Gregory J. Fouratt
  United States Attorney
 Presiliano Torrez
   Assistant United States Attorney
Office of the United States Attorney
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Michael V. Davis
Albuquerque, New Mexico

*Attorney for the Defendant*