**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                                           No. CR 06-2561 JB

JIMMY CHATTO,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed March 24, 2008 (Doc. 52). The Court held a sentencing hearing on March 27, 2008. The primary issue is whether the Court should grant Defendant Jimmy Chatto's request for a variance and sentence him to 60 months imprisonment. Because the Court does not see, in the record before it, a sound reason to vary from the advisory guidelines for Chatto, the Court will deny Chatto's request for a variance, and sentence Chatto at the low end of the Guideline range to 108-months imprisonment.

**FACTUAL BACKGROUND**

Chatto is an older man who apparently immediately recognized that he had done wrong by sexually touching the young victim. See Presentence Investigation Report (disclosed August 23, 2007)("PSR"), Addendum at 2 (disclosed February 5, 2008)("Addendum"). While Chatto has an alcohol problem, he has largely avoided criminal conduct and been a hard-working employee. For the most part, his history and personal characteristics are, for sentencing purposes, unremarkable.

1. **Chatto's Personal History**.

Chatto is forty-seven years old, and was born and raised in Pine Hill, New Mexico. See Sentencing Memorandum at 3, filed March 24, 2008 (Doc. 52)("Sentencing Memorandum"). Chatto graduated from only the sixth grade. See id. Chatto has been working on getting his GED while residing at the La Pasada Halfway House. See id. For most of his life, he has been a rancher, but he has also involved himself in fire fighting and worked for a company called the Kachina Packing Company. See id. at 3-4.

Chatto was married for thirteen years to Rosita Pino. See id. at 3. His wife recently died from complications related to a surgery. See id. He has one daughter, Rotiesha, who is now six-years old. See id. Rotiesha is currently in her maternal aunt's custody. See id.

2. **Chatto's Criminal History**.

The PSR sets forth fully Chatto's criminal history. See PSR ¶¶ 26-30, at 8-9. Chatto has two charges for Public Intoxication, one charge for Speeding, and a DWI case. See id. Chatto's criminal history demonstrates that he has a drinking problem, but otherwise does not show a record of significant criminal involvement. See id.

**PROCEDURAL BACKGROUND**

Chatto was arrested on July 19, 2006 on a Criminal Complaint. See Sentencing Memorandum at 2. He was, however, released two days later at his detention hearing and placed in La Pasada Halfway House. See id. He has thus been on pre-trial services release and supervision at the La Pasada Halfway House since July 20, 2006. See id. Chatto was indicted on December 15, 2006 and he entered a not-guilty plea at his arraignment on December 21, 2006. See id.

1. **Chatto's Conduct While Under Pretrial Supervision**.

Chatto has been residing at the La Pasada Halfway House since July 20, 2006, almost a year

and a half.  See Sentencing Memorandum at 4.  During that time, he has not had a violation and has continuously worked.  See id.  While under Pretrial Supervision, he has not submitted any dirty urines, has attended all sessions that his Pretrial Services officer has required, and otherwise has abided by all terms and conditions of his release.  See id.

    **2.**    **Plea Agreement.**

On June 4, 2007, Chatto entered his guilty plea to one count of Aggravated Sexual Abuse of a Child.  See Plea Agreement at 2, filed June 4, 2007 (Doc. 36). On that same day, the parties entered into a non-binding, written plea agreement, that contained a number of stipulations.  See Plea Agreement at 4-5. Specifically, the plea agreement contained stipulations stating that certain enhancements applied and some did not.  See id.  Pursuant to the plea agreement's terms, the parties agreed to a base offense level of 30, with a 4-level adjustment pursuant to 2A3.1(b)(2), because the victim was under the age of twelve at the time of the incident.  See Plea Agreement at 4.  With a 3-level reduction for acceptance of responsibility, Chatto's resulting offense level would be 31, resulting in a Guideline imprisonment range of 108 to 135 months.  There is also a stipulation to the low end of that range.  See Plea Agreement at 5.  Additionally, by signing the plea agreement, Chatto knowingly waived the right to appeal any sentence within the statutory range applicable to the statutes of conviction that does not exceed the upper range of the stipulated guideline range.  See Plea Agreement at 5.

    **3.**    **Advisory-Guideline Sentence**.

On August 23, 2007, the United States Probation Office ("USPO") disclosed the PSR.  See PSR.  The USPO determined that Chatto had a total offense level of 36 and a criminal-history score of I.  See PSR ¶ 25, 31, at 8-9.  The PSR calculated Chatto's guideline range to be 188 to 235 months.  See  PSR ¶ 49, at 13.

On January 30, 2008 Chatto's counsel filed his objections to the guideline range in the PSR. See Objections to Pre-Sentence Report, filed January 30, 2008 (Doc. 46). Chatto's sentencing has been continued on several occasions for various reasons, including because of his objections to the PSR. See Unopposed Motion to Continue August 31, 2007 Sentencing, filed August 13, 2007 (Doc. 40); Unopposed Motion to Continue Sentencing, filed September 27, 2007 (Doc. 42); Unopposed Motion to Continue Sentencing, filed December 12, 2007 (Doc. 44); Unopposed Motion to Continue Sentencing, filed February 7, 2008 (Doc. 47). The Court sustained Chatto's objections. See Memorandum Opinion and Order at 35, filed May 12, 2008 (Doc. 56). Chatto's guideline range is therefore 108 to 135 months. Chatto filed his Sentencing Memorandum on March 24, 2008. See Sentencing Memorandum, filed March 24, 2008 (Doc. 52). Chatto submitted the information in the sentencing memorandum to assist the Court in fashioning a sentence, as required by 18 U.S.C. § 3553(a) and United States v. Booker, 543 U.S. 220 (2005), "sufficient but not greater than necessary" to achieve the statutory purposes. Sentencing Memorandum at 1. Specifically, Chatto is requesting that the Court impose a sentence of 60 months incarceration, followed by a term of supervised release. See id. at 5-6.

At Chatto's sentencing hearing on March 27, 2008, Chatto provided the Court with two letters from his supervisors at work. See Clerk's Minutes, filed March 27, 2008 (Doc. 53). Both letters stated that Chatto was a hard-worker and an asset to each business. See id.

**RELEVANT LAW REGARDING SENTENCING GUIDELINES**

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States severed the mandatory provisions from the Federal Sentencing Act, thus making the Guidelines effectively advisory. In excising the two sections, the Supreme Court left the remainder of the Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous

factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D). See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case."). To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considered. See Rita v. United States, 127 S. Ct. 2456, 2464 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its]

statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses." United States v. Cage, 451 F.3d at 593 (internal quotations omitted).  A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a).  See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006).  This presumption, however, is an appellate presumption, not one that the trial court can or should apply.  See Rita v. United States, 127 S. Ct. at 2463; Gall v. United States, 128 S.Ct. 586, 591 (2007); Kimbrough v. United States, 128 S.Ct. 558, 564 (2007).  Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory Guideline sentence.  See Rita v. United States, 127 S. Ct. at 2463; Gall v. United States, 128 S.Ct. 586, *591 (2007); Kimbrough v. United States, 128 S.Ct. 558, 564 (2007).

## ANALYSIS

Chatto requests that the Court consider several important circumstances in fashioning a sentence for him: (i) his lack of significant criminal history; and (ii) his conduct while under pretrial services.  See Sentencing Memorandum at 1-2.  The Court has carefully considered these two factors.  In the end, however, the Court concludes that these circumstances do not warrant a sentence below that which the Guidelines suggest. The Court therefore should not vary from the advisory guideline sentence, because to do so would not achieve the purposes of 18 U.S.C. § 3553(a).

## I. NATURE AND CIRCUMSTANCES OF OFFENSE AND CHATTO'S HISTORY AND CHARACTERISTICS.

The nature and circumstances of Chatto's offense are serious. While Chatto's history and characteristics are not extraordinary in any particular degree, they certainly do not override the seriousness of Chatto's crime. These factors do not counsel for a variance from the advisory guideline sentence and, indeed, strongly suggest that the guideline sentence well reflects the severity of Chatto's conduct.

## II. JUST SENTENCE.

The Court is not convinced that the sentence which Chatto proposes, 60 months, would serve justice. Moreover, the Court believes that a 108-month sentence is a just sentence for the crime that Chatto committed. While Chatto no doubt recognizes the seriousness of his offense and is not, with his proposal, attempting to avoid the reality that the sentence will carry a prison sentence, the Court believes that a just sentence must be longer than what he proposed. To vary here would be to undercut Congress' expression of its political will that individuals who commit sex crimes should receive lengthy periods of incarceration.

## III. DETERRENCE, INCAPACITATION, AND REHABILITATION.

Chatto argues that, in essence, he began serving his sentence the date that he was released from custody to attend the Halfway House. See Sentencing Memorandum at 5. But that characterization of his situation is not accurate and minimizes the importance and severity of incarceration as a punishment. Regardless, a reasonable sentence demands considerably more incarceration than the time he has so far spent in custody.

The Court is also not convinced that Chatto's proposed sentence of 60 months would achieve the goals of deterrence, incapacitation and rehabilitation. While the circumstances of Chatto's

pretrial release reflect a commitment to his supervision requirements, they do not, in the Court's opinion, illuminate more. For example, Chatto's pretrial circumstance are not so impressive that they eliminate or mitigate the Court's concern for recidivism. Indeed, it is not obvious what, if anything, the connection between his pretrial services record and the probability of future criminal conduct is.

Chatto argues that it is obvious that he is not a threat to the community and that, if he were a threat, the Court would not have initially released him on pretrial services. See Sentencing Memorandum at 5. Chatto's statement is incomplete and inaccurate. Chatto is a threat to the community, but the Court has believed -- correctly to this point -- that there are conditions, or a combination of conditions, which mitigate that risk of danger. The pretrial conditions do not eliminate the risk.

The Court believes that there is a continuing need for deterrence, both specific and general. While the Court has adequately addressed that need during the pretrial period, the Court now needs to address that need long term. The Court is not convinced that shortening Chatto's prison time serves the continuing need for deterrence, as to Chatto or to others who may be tempted to commit similar crimes.

Chatto has a need for rehabilitation. Chatto represents that he is a person who is committed to his rehabilitation, and the letters from his former employers reflect his hard work. The Court is not convinced, however, that, to help him rehabilitate, the sentence needs to award him for his commitment to abide by his pretrial services release since his arrest. The reward for abiding by his pretrial condition has been that he is not in custody. While the Court wants very much to encourage Chatto's rehabilitation, the Court is not convinced that shortening rehabilitation time as a reward is an appropriate response. Moreover, there are other sentencing goals that the Court must try to

achieve other than rehabilitation.

## IV.     MINIMALLY SUFFICIENT SENTENCE.

The sentence must be sufficient, but not greater than necessary, to achieve the purpose of punishment. While defendants often focus on the "not greater than" language, a sentence must first be sufficient to achieve the purpose of punishment. Often a sufficient sentence will constitute a range, and the "not greater than" language dictates where in the range of sufficient sentence the Court must go.

Chatto submits that a sentence of 60 months is sufficient to achieve the goals of punishment. See Sentencing Memorandum at 5. When, however, the Court carefully applies the sentencing factors to Chatto's case, and strives to arrive at a minimally sufficient sentence, the Court is not convinced a 60-month sentence would be sufficient.

In determining the minimally sufficient sentence, the Court must ask whether a more severe sentence than the 60-month term which Chatto proposes, would achieve greater justice, deterrence, incapacitation, and rehabilitation. It is not obvious to the Court how a shorter sentence serves those goals better than the guideline sentence. The Court concludes that a greater sentence would achieve those goals better than a 60-month sentence. The Court believes that a sentence of 108 months reflects the seriousness of Chatto's offense, promotes respect for the law, provides just punishment, affords adequate deterrence, and protects the public. Furthermore, this sentence is reasonable and complies with the purposes of the Sentencing Reform Act. In conclusion, the Court will deny Chatto's request that the Court impose a sentence of 60 months. Rather, the Court will impose a sentence of 108 months, followed by a five-year period of supervised release.

**IT IS ORDERED** that the Defendant's request in his Sentencing Memorandum for a variance from the advisory guideline sentence is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Gregory J. Fouratt
  United States Attorney
Presiliano Torrez
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Michael V. Davis
Albuquerque, New Mexico

    *Attorney for the Defendant*